And the court now calls agenda number three case number one one six five one two people of the state of Illinois versus Marcelle Simpson. Are you ready to proceed? You may proceed. Good morning. I am Janet Mahoney on behalf of the people of the state of Illinois. I am here today to talk about the case of Philip Thomas. Philip Thomas was beaten to death on the streets of Chicago on May 8, 2006, by six men who kicked, punched, and hit him repeatedly with a bat and a metal bar. Approximately 15 minutes after that beating, Vanzell Franklin encountered a defendant on the streets of Chicago, and the defendant admitted to Vanzell that he had hit Philip Thomas repeatedly with a baseball bat. A few days after that encounter with the defendant, Vanzell Franklin was arrested by the police in connection with this case. He was brought to the police station, and a conversation with the police was video recorded. In that conversation, Franklin told the police about defendant's admission that he beat Philip Thomas with a bat. The people called Franklin to testify at trial. If Franklin cooperated, Franklin would have been allowed to testify about defendant's admission regardless of whether he had any knowledge of the events in the admission. But Franklin did not cooperate. Section 115-10.1, subsection 2, allowed the people to ask Franklin about his prior inconsistent statement that was video recorded in his conversation with the police, if the requirements of the statute were met. And the requirements of the statute in this case were met. The prior statement was inconsistent. Franklin was on the stand and available for cross-examination. The event about what he was going to testify if he cooperated was the defendant's admission, and he had personal knowledge of that event. And the statement was video recorded. Each and every requirement of the statute was met, and the statement was introduced. The appellate court in this case... Counsel, how do you address defendant's argument that the statute has to be concluded ambiguous because it's subject to two reasonable interpretations, and if that's the case, the defendant's interpretation is valid? It is not subject to more than two interpretations. It's a statute that was written broadly to encompass more than eyewitness testimony about the crime. That is why they use the term event. That is why they also use the term condition. So they included more than what a witness might have seen at the scene of the crime. So event couldn't be reasonably interpreted as the admission and or the underlying crime? If he was an eyewitness to the crime, then it would also include that. But in this case, there was only one event. There could be two events about which a witness can testify. But when you're dealing with an admission here, it was  Is it at all persuasive that 18 appellate court decisions spanning over a 25-year period since 1989 have all interpreted the statute as defendants suggest? No, because each and every one of those cases went beyond the plain language of the statute and adopted a definition of personal knowledge that doesn't appear in the statute, nor needed to rely on secondary sources in order to be defined. And it all started with the very first case of People v. Hastings, in which the court was not even considering a prior statement that contained a defendant's admission. And in that case, the Hastings court defined personal knowledge by relying on a secondary source. Personal knowledge had a straightforward meaning that didn't need a definition. And if the legislature wanted a specific definition for personal knowledge, they would have included it in there. But it was the everyday kind of term that people know, and they did not provide a special definition for it. It's plain on its face. Ms. Mahoney, in follow-up to Justice Thomas' question, does the legislature's failure to revise that section in response to the numerous appellate court cases that Justice Thomas referred to interpreting the statute have any bearing on whether this court should accept the state's proposed interpretation? No. This court left this question open in People v. Thomas, and the language of the statute is plain and unambiguous. If anything, this court finds, as the state says, the language is plain on its face. And that is not what the legislature intended. That is when they can act. But if it's plain on its face and it's what they wanted, there is nothing to change here. There is nothing for them to do. It states what they wanted it to state. If they wanted personal knowledge to be defined in a special way, they would have provided it. If they wanted event to apply to the subject of the defendant's admission, they would have provided for that in the statute. But they didn't provide for that. It allows for the admission of this prior statement because this witness, if he cooperates, would be able to testify about this defendant's admission, even though he didn't have personal knowledge of the events in that admission. So we're, again, going back and forth with Justice Berk here. We're not doing violence to the principle of statutory construction that says where the defendant is after judicial construction. Namely, in this case, those 18 appellate court decisions that looked at the statute as the defendant does here and did nothing about it. We're not doing violence to that principle of statutory construction, if we agree with you here? No, because this court has left that question open. And also because the language of the statute is plain and clear as it is written and accomplished what they wanted. And we have left it open where? In People v. Thomas. The reading in of the unstated condition in this case was error. The plain language of the statute provided for the introduction of this prior inconsistent statement that contained the defendant's admission, which it cannot be stressed enough, had this witness cooperated, he would have been able to provide testimony about the defendant's admission, even though he did not see the subject of that admission. The purpose of the statute would be frustrated if it was required that he have knowledge of the subject of that admission because this otherwise admissible evidence would be excluded. It is also very important to note in this case that the appellate court found that the defendant was prejudiced by the introduction of this statement. There was overwhelming evidence besides Gonsal Franklin's statement, prior inconsistent statement, that established the defendant's guilt here. You had an eyewitness to the beating, Jesse Rucker, who testified that he saw two to three people chasing the victim on foot. He saw a Bronco and he saw a Chevy following behind them. He saw multiple people beating the victim with a bat and a metal pole. And he also saw the victim at one point try to crawl underneath the car and one of the offenders pull him back out from underneath it. Let me ask you something about the standard. You just said that it was overwhelming evidence. We're here in the world of ineffective assistance of counsel, correct? Correct. So what is the proper analysis in terms of the framework that we have here? There is no reasonable probability that the outcome of the trial would have been different if Franklin's statement had been excluded. This outcome would be exactly the same and the reason it would be exactly the same is because there is overwhelming evidence. In addition to Jesse Rucker's testimony, we had the testimony of Johnny Graves, we had the testimony of Dwayne Thompson and Lerone Wallace, who essentially stated the exact same facts that Jesse Rucker did, including the fact that the victim tried to get underneath the car, Johnny Graves said, I pulled him out. Everybody stated that he was chased on foot and chased by two cars, a Bronco and a Cavalier. Everybody stated that six people participated in the beating and that a bat and a metal pole was used in this. There was more than enough evidence to convict this defendant, even if Gonzale Franklin's prior and consistent statement had been excluded. And for the court here to find that the defendant was prejudiced by the statement was error. Ms. Mahoney, can I ask you a factual question with respect to some of that evidence? I believe that the defendant and the appellate court here indicated that Rucker viewed the incident from 150 feet away and you say it was from 5 to 10 feet away. His initial viewing started from farther away than the 5 to 10 feet, but he was initially on the second floor of his residence, came down to the front porch and was closer and at one point the group passed within 5 to 10 feet of his porch. So there were parts of this event that were much closer than the 150 feet. Can I ask you another question? We've talked about the fact that there have been 18 appellate court opinions that consistently hold to the contrary of what you've said here. In your PLA, you assume that there was a conflict, a split of authority. You cited People v. Leonard and then I notice you never cite that again. Is there any conflict? Is there any split of authority in here that would have caused this court to take this case? I believe it was an unpublished opinion in People v. Smith that was the conflict. And that was a court that said that in People v. Thomas, this court stated that this evidence was admissible and that's where the split would have come in. Unless there are any other questions, the people request that you affirm his conviction, reverse the appellate court decision and affirm his conviction for first-degree murder and his sentence. Thank you. Good morning, Your Honors. Good morning. My name is Megan Ledbetter. I'm with the Office of the State Appellate Defender on behalf of the defendant appellee, Marcel Simpson. May it please the Court. Ultimately, this is an ineffective assistance of counsel case. What the appellate court found was that Simpson was denied his Sixth Amendment right to the effective assistance of competent counsel. But whether counsel is ineffective turns on whether Von Zell Franklin's prior and consistent statement to police was admissible under Section 115-10.1c2. The initial question, therefore, is one of statutory construction, which you are all familiar with. Namely, does Section 115-10.1c2 allow the admission of an inconsistent custodial statement in which the witness narrates the defendant's alleged confession to a criminal offense if the witness has no personal knowledge of the underlying offense? As this Court is aware, the first and last principle of statutory construction is to ascertain and give effect to the legislative intent. This principle separates the legislative branch, which makes the law, from the and must not be subjugated to any other principle of statutory construction. But the State seeks to do just that. It seeks to subjugate the principle of legislative intent to the principle that tells the judiciary to look first in its quest for legislative intent to the plain language of the statute and to look no further if the plain language is clear and unambiguous. The truth is, the State does not want this Court to look beyond the text of what it will find there, a clearly expressed legislative intent contrary to the State's position. The State's plain language argument, however, has an insurmountable problem. The text is susceptible to at least two different interpretations and is not unambiguous. In cases like this one, where the State seeks to rely for the truth of the matter asserted, and that's a critical point, on an alleged confession contained within a statement admitted under subsection c2, there is an ambiguity as to both the meaning of the terms event and personal knowledge, and in particular, how those two terms interact with one another. For one thing, it's not at all clear that the term event, as used in the statute, should ever be interpreted to encompass the making of a third-party statement. And I'm talking about on the face of the statute. And the reason for that is because, for one, statements are not generally described as events, as a matter of convention. And more importantly, a third-party statement used for the truth of the matter asserted is, as a general rule, hearsay. And if, as the State claims, event is a broad, all-encompassing term, then any statement can be an event, including a hearsay statement. But we know that section 115-10.1c2 cannot possibly allow the admission of a prior and consistent statement in which the witness narrates a hearsay statement that the witness personally observed. So that reading would dissolve the long-standing prohibition against double hearsay. And for that reason, we know it's wrong, and we know that the statute does have unstated limitations on the term event. How is there a double hearsay problem if the statement is one of the defendant? Well, the defendant's statement certainly would not be hearsay on its own. But our objection is to Vonzell Franklin's custodial statement, to be clear, because that was not always clear in the State's brief. They've emphasized the defendant's statement would not be hearsay. But the statement to which we're objecting is Vonzell Franklin's prior and consistent statement in custody. And what I was mentioning now with respect to double hearsay is that if you believe the State's interpretation that event is a broad, all-encompassing term, then the term event can describe any statement, not only a statement such as an admission by a party opponent that would qualify as a hearsay exception, but any statement. And we know that that's not possible. It's not possible that the statute allows the admission of double hearsay that would be inadmissible as single hearsay. So what I'm getting at is that there is an inherent limitation on the term event, as used in the statute, which is to say it's ambiguous. And it all boils down to that. The other thing that's wrong with the State's interpretation is that it makes an arbitrary distinction between the idea that the event that's important to the State is the admission event, but the State wants to ignore the fact that the crime would also be an event under its broad, all-encompassing definition of the term. So that distinction is arbitrary, and it's not supported by the text. The bottom line is that the text is susceptible to the following alternative interpretation, that the personal knowledge requirement applies to every event described in the witness's prior and consistent statement, including any event that's described in the alleged admission within the prior statement. And that's for good reason, because the State is trying to rely on events described in the defendant's alleged admission for the truth of the matter asserted. There's also, obviously, as Your Honor pointed out, Justice Thomas, a numbers problem with the State's plain language argument. Unambiguous means, by dictionary definition, not open to more than one interpretation. Yet of the 18 published appellate court decisions that have decided this issue, not a single one of them has agreed with the State's supposedly singular interpretation of the statute. So it's not possible that so many reasonable minds could interpret the statute to be consistent with its unambiguous meaning. If the statute is unambiguous, then it can only mean what it has consistently been interpreted to mean. But, however, Simpson would acknowledge the inherent ambiguity of the text. And that brings us to the other principles of statutory construction, every one of which also supports Simpson's position. When the text of a statute is ambiguous, courts must look to other aids of construction, chief among them to legislative history. And this is where Simpson's argument really shines, because Michael Graham really originated, the person who originated the idea of this statute, in an article he published in 1977 that proposed amendments to Federal Rule of Evidence 801D1A. And he explicitly stated, explicitly in this article, that the personal knowledge language should have the limitation that we're now arguing. And Stigman, Justice Stigman, Robert Stigman, adopted Graham's proposal and proposed it as legislation, submitted it to the legislature of Illinois, and also explicitly adopted Graham's understanding of personal knowledge, which is that a prior and consistent statement in which the witness describes the defendant's admission would be inadmissible, and this is a quote, quote, inadmissible as substantive evidence unless the witness had itself. But here's the most critical part of all. When the Illinois legislature passed this bill into law, Representative Cullerton went to great lengths to incorporate Michael Graham's understanding of the term personal knowledge, including its limitations, into the legislative history. The state pointed out in its reply brief that initially, when Representative Cullerton mentioned Michael Graham's article and then asked his fellow representative, Representative McCracken, is that your understanding of our intent with respect to this bill, that McCracken answered, I know I'm supposed to say yes, but I'll be candid. I did not think that was the limitation on it. However, the state neglects to tell you about Cullerton's response, which really hits home what the legislative intent is. And if it's okay, I would like to read you a bit of what he actually said. Cullerton responded, okay, that's why it's important, I think, that we cover this. And I did talk to Mr. Graham, who's a professor at the University of Illinois. Let me just indicate that only a witness with personal, I'll even quote from his article. Then I won't bore you with that. But he goes on to quote from the article the part about the specific limitation on personal knowledge that we've been discussing. And then he closes with these remarks. So with that background of the bill, and I can assure members of the General Assembly that Graham was really the And I think we should, in fact, incorporate in our legislative intent the article that he drafted concerning the bill. And immediately after Representative Cullerton's remarks, and with no further discussion, the bill was passed by a vote of 106 to 1. So that's the legislative intent. And with a statement of intent that explicit, there's no need to rely on anything else. However, there are other principles of statutory construction that also support Simpson's view, one of which is that whenever possible, a statute should be construed so that no term is rendered superfluous or meaningless. As the First District Appellate Court has pointed out, if we read the statute the state's way, Michael Graham has pointed this out as well, by the way, if we read the statute the state's way, the personal knowledge language is superfluous because personal knowledge of the existence of the statement is required by the rubric of authentication. Another way of thinking about this same issue is that the state's interpretation of the statute sees no qualitative difference whatsoever between the types of statements allowed in under subsection C1 of the statute and subsection C2. And that's not a coincidence. It's because the state is trying to eliminate the personal knowledge requirement precisely because it is the purpose of the personal knowledge requirement to exclude from evidence a prior inconsistent statement in which the witness is merely reciting secondhand information. There's also the principle of statutory construction which says that if the legislature does not amend a statute after it's been judicially construed, that we could presume that they didn't have a problem with that construction, as Your Honor, Justice Thomas pointed out. And, of course, the court has been very consistent in construing the statute for 25 years, and the legislature has had ample opportunity to correct it. Finally, and perhaps most importantly, there is the principle of lenity toward the accused. If a criminal statute is ultimately susceptible to two or more interpretations, the courts must adopt the construction that operates in favor of the accused. So, in sum, the state's position is syntactically and mathematically impossible. The legislative intent is clear. Section 115-10.1C2 does not allow the admission of a prior inconsistent statement in which the witness merely recites the defendant's alleged confession. How does the personal knowledge, if we accept that the person has to have personal knowledge of the underlying event, how does that fact give greater credibility, if that's what we're looking at, to the prior inconsistent statement that the person witnessed or heard? Yes, thank you for asking that question. Michael Graham did have a couple of notions about why that helped, one of which is that if the person has knowledge of the underlying events, that is, the events of the crime, he is a better witness for cross-examination, essentially. And also the idea that it's less likely, if he heard the defendant say something that he knew not to be true based on his personal observations, then he would be much less likely to repeat the defendant's statement. So these are the main reasons. And what's important is that a statement that has this additional indicia of reliability is slightly more reliable than one that doesn't. And the legislature has drawn that line in the sand. The statements that are under C1, when somebody testifies in court under oath in the presence of other persons and a court reporter who's recording their statement, they don't have to have personal knowledge of the underlying events. They can tell you about a statement that they don't know the underlying events of. But when they've said it in police custody, and let's look at the facts of this case, that Vanzell Franklin made these statements, he was actually under arrest for this crime. It was the middle of the night, and he had been interrogated for hours. He said he was in custody for three days. The officer said he was in custody for about 12 hours. But either way, there's nothing particularly reliable about what somebody says when they're being pinched by cops in the middle of the night under arrest for murder. So the fact that they're making him have personal knowledge of the underlying statements gives it an additional indicia of reliability. So that brings us to the ultimate issue in this case, which is ineffective assistance of counsel. And as you know, ineffective assistance of counsel has two components, deficient performance and prejudice. The deficient performance prong has been relatively uncontroversial in our case. A defense counsel has a solemn duty to shield the defendant from unreliable and prejudicial evidence. And in this case, counsel allowed the state to introduce a hugely prejudicial hearsay statement, which was inadmissible under Illinois law. And then he allowed the state to treat that statement as substantive evidence of a confession and to harp on it in front of the jury to play it again during rebuttal closing argument to talk about the defendant boasting and bragging of his brutal acts and brazen confession. And the state really has never suggested that this could have been a possible trial strategy, as it clearly could not have been. They did suggest in their opening brief, I believe, that counsel wasn't deficient because it would have been fruitless to make an objection. But I think it's fair to assume that that doesn't really make sense because all of the appellate law, especially in the first district, has supported our position for 25 years, so an objection would have been sustained. And that leaves the prejudice prong. And there's a few things to consider with respect to prejudice. First, just the general impact of a confession on the jury as a general proposition, how potent it is, how powerful it is, the relative weakness of the rest of the state's case, and the state's emphasis on the confession in this case. One quick point, though, before I get to those aspects of prejudice, the defendant's burden of proof. The state has suggested to this court that closely balanced evidence, the closely balanced evidence prong of plain error is essentially equivalent to the prejudice prong of Strickland, citing people being white. That's not accurate. I think nobody would know better than Justice Carmeier, who wrote the opinion in white, what you meant by that. But the court in white merely analogized the prejudice, the idea of prejudice under closely balanced evidence with the idea of prejudice under Strickland, and basically found that in the case of white, that neither analysis really needed to be engaged in because there was overwhelming evidence and also because the evidence that was objected to had had a minimal effect on the trier of fact in that case. Regardless, the standard for ineffective assistance prejudice is the same as it always was, that the defendant must show there's a reasonable probability that the outcome of the trial would have been different if not for counsel's deficient performance. In this case, the state presented four pieces of evidence. An elderly eyewitness, Jesse Rucker, who identified Simpson from a lineup. The testimony of an accomplice, Johnny Graves, who was offered a very sweet plea deal in exchange for his testimony against the defendant. The prior and consistent statement of another accomplice who completely avoided prosecution just by virtue of cooperating with the police after he made his statement. He was never prosecuted, and then when he came to court, he didn't even want to repeat his statement. And finally, the fourth piece of evidence, and the most powerful, the confession, the alleged confession of Marcel Simpson admitted to the prior and consistent statement of Vonzell Franklin. And that was the state's strongest piece of evidence, and they knew it. That's why they emphasized it so heavily, including replaying it to the jury in their rebuttal closing argument just before they went to deliberate. So without the confession evidence, the state's case wasn't very good. And you had asked counsel about, the state's counsel about the distance that Jesse Rucker viewed this at. And I believe the number actually was 164 feet that the defense investigator calculated the distance from his, from Jesse Rucker's, where he viewed it on his front porch to where the beating actually occurred was 164 feet. And Rucker had said that at one point when the persons were running, chasing the victim, that they passed within five or ten feet of his house. And that was where that number comes from. He certainly didn't view the beating at that distance. So, and there's also, you know, the lack, there's a lack of physical and forensic evidence in this case. And there's no linking him, no linking Simpson to this crime through physical or forensic evidence, or even the Bronco or the Chevy or the victim. And then the fact that the state had emphasized it. Lastly, I would like to remind the court that there can be ramifications or intangible consequences, if you will, of professionally unreasonable assistance. Simpson's lawyer did not know that Franklin's statement was inadmissible. He allowed the jury to hear it not once, but twice, including just before their deliberations. He even put on a defense that centered on refuting the statement. He called a woman named Sharnisha Houston with the specific intent of trying to establish that there were elements of Vonzell Franklin's statement that were untrue, because he had said she was in the alley and he called this woman to say, no, I wasn't in the alley. So he put on a defense designed to refute the statement. And there's really no way to know whether counsel's erroneous perception of the state's admissible evidence may have affected his ability to secure a plea deal or a lighter sentence for his client. So in sum, counsel's overall performance in this case not only prejudiced Simpson's defense, but undermined the adversarial process itself. Accordingly, if your honors have no other questions, we ask this court to affirm the appellate court judgment finding counsel ineffective in granting Simpson a new trial. Thank you. Thank you. Justice Tice, I apologize for my response to you about the conflict in the PLA. That was noted in connection with the impeachment issue that was raised in the PLA, but which is not addressed here today. There was no conflict noted in regards to the issue raised here. So the reason why you argue that this court should take this case after all of these years of these cases settling this issue is because of a conflict on an issue that you're not raising now. Is that right? No, the reason why this court should take this case is because the plain language of the statute provides for the introduction of this evidence. Plain on its face, every day of the week, this witness can get on the stand and testify about his admission, about a defendant's admission, and each and every requirement in 115-10.1c2 is met when that witness does not cooperate. And for 18 years, the appellate court has been going beyond the plain language of the statute, relying on secondary sources to define personal knowledge, to take the term event and find when it comes to an admission, it just doesn't apply to the admission, it applies to the subject of it. And that, for 18 years, that needs to be corrected. The plain language of the statute provides for this. There was nothing for the legislature to change here. This is what they intended, according to the plain language of the statute. Otherwise, they would have provided a definition of personal knowledge. Otherwise, they would have stated that the event, as it applies to third-party statements, applies to the subject of the statement. They would not have allowed it to apply just to the making of the admission, as it allows for now. The only way to find what the appellate court did here was to read an unstated condition into the text of the statute itself. And the law states that a reviewing court should not presume the legislature didn't mean what they stated on its face. And that is exactly what has happened here time and time again. And that needs to be corrected. Having been corrected, if that wasn't what the legislature wanted, then they can change the language. But the language they gave us provides for the introduction of the statement. When you look at the language of the statute, going beyond it, considering what this case is stating, considering what the secondary sources say it should have said, should not be in this court's minds when it's looking at the plain language of the statute. Now, where the meaning of the statute is unambiguous, this court has stated that it will give little weight to the fact that the legislature did not amend the statute when the decisions at issue were the appellate court. It is now the time for this court to make the decision on the issue, and then the legislature can act. In this case, we are not calling Gonzale Franklin as an eyewitness. We are calling him as a witness to the making of an admission. That's a critical point to be made here. This statute does not allow for the introduction of inadmissible double hearsay. This statute doesn't come into effect until the witness takes a stand, the state asks a question about evidence that is admissible, and then he disavows knowledge of that. If the state asked a question about inadmissible testimony at the outset, it would be objection sustained. The witness would never have to disavow knowledge of that prior statement. But because it's admissible evidence, the witness then had to either testify according to what he stated previously, and if he didn't, the prior statement comes in. There is no room within the statute for inadmissible double hearsay to come in. It's important to note that Professor Graham did write an article regarding the federal rules of evidence on this issue before the legislature acted in this case. The legislature didn't adopt any restrictive language to reflect what Professor Graham wanted in his article, and that is significant. It's also important to note that while Representative Cullerton did state that he spoke to Professor Graham and what he thought the intent of the bill was, those were strictly his views. The legislature at that point didn't change the language of the statute to accomplish what the intent that Representative Cullerton thought the bill meant. And it's pretty significant that the sponsor of the bill, the actual sponsor of the bill stated, I didn't think that that was what the intent was. We told it that there was only one vote against the bill. Do you know, was it the gentleman that was quoted here saying that's not my understanding of what this bill does? Did he vote against it or did he vote for it? I don't know that. I don't know that, but I think it's significant that nobody acquiesced to that intent, nobody stated anything to it. In fact, it could be just that they were ready to vote on it and it stated what they wanted it to state, and that was just the intent of one representative. It is also significant at this point the Senate had already passed this bill and there's no indication that they had received any information about this intent. In terms of the ineffective assistance of counsel claim with the prejudice part of this, accomplished testimony is still good testimony and can still convict a defendant even standing alone. Also, prior and consistent statements brought in under 115-10.1 is brought in substantively. There is nothing in the law that states that neither testimony under either testimony or either scenario isn't good testimony. And what's important here is that this accomplice, these prior and consistent statements substantively used corroborate everything the eyewitness said, every single thing he said. How many people are chasing him on foot? How many cars are there? What kind of cars are there? What kind of weapons did they use when they beat him? When the victim tried to get underneath the car, did somebody pull him out? It's pretty significant that these accomplices and this prior and consistent statement testimony, while different than the eyewitness testimony, corroborated them on every point. It proved the defendant's guilt beyond a reasonable doubt and established that the defendant here would have been found guilty even if Bonzell Franklin's statement was excluded. That testimony should not be discarded like it was discarded by the appellate court, but should be considered strongly. Unless there are any other questions, the people request that you reinstate defendant's conviction for first-degree murder in a sentence. Thank you. Thank you. Thank you, counsel. Case number 116512, People of the State of Illinois v. Marcel Simpson, will be taken under advisement as agenda number three. Ms. Mahoney and Ms. Ledbetter, thank you for your arguments today. You're excused at this time. Marshal, the Supreme Court will take a ten-minute recess at this time.